UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
NATHANIEL D. POLLARD, on behalf of
N.M.P.

                          Plaintiff,

       -against-

NANCY A. BERRYHILL,[1] ACTING
COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
--------------------------------------------------------X

**MEMORANDUM & ORDER**

Civil Action No. 16-2700 (DRH)

**APPEARANCES:**

**For Plaintiff:**

Nassau/Suffolk Law Services Committee, Inc.
1 Helen Keller Way, 5th Floor
Hempstead, NY 11550
By:    Rezwanul Islam, Esq.
        James M. Denson, Esq.

**For Defendant:**

Bridget M. Rohde
Acting United States Attorney, Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201
By:    Jason P. Peck, Special Assistant AUSA

**HURLEY, Senior District Judge:**

      Plaintiff Nathaniel D. Pollard commenced this action on behalf of N.M.P. a minor

("NMP"), seeking judicial review of the determination of the Commissioner of Social Security,

following a hearing before an Administrative Law Judge ("ALJ"), that NMP was not under a

---

[1] Nancy A. Berryhill is substituted pursuant to Rule 25(d) of the Federal Rules of Civil
Procedure.

disability as defined in the Social Security Act and therefore is not entitled to disability benefits. Presently before the Court is plaintiff's motion and defendant's cross-motion for judgment on the pleadings. For the reasons set forth below, plaintiff's motion is denied and defendant's motion is granted.

## I.      Summary of Testimonial Evidence

NMP lives with her father, brother, and paternal grandmother. At the time of the hearing she was 12 years old and in seventh grade, attending multiple classes with multiple teachers. Her best friend is her cousin Kyra; she likes Social Studies and finds Math and English hard. According to her father, NMP is disabled because of incidents that began in the third grade which required her to receive counseling and psychiatric help because she could not keep up and was depressed. NMP began weekly mental-health counseling and monthly psychiatric treatment at Catholic Charities. She takes Risperdal daily which has helped her "a great deal" and results in her "rarely shut[ting] down" or having tantrums. She does not fight with her father since she began taking Risperdal. She continues to have memory problems and requires extra help in school. NMP does not have many friends and stays close to home. She does chores such as making her bed, washing dishes, taking out the garbage and can dress herself (but needs help tying her shoes), use a cell phone and computer, and bathe herself (but needs help setting the water temperature). She wants to try out to play lacrosse and basketball at school. When she was in sixth grade she got detention a lot and had many problems at school, including not wanting to

---

[2] Having carefully reviewed the administrative record, the Court finds that the factual backgrounds presented by the parties accurately represent the record. As such, the following background is taken substantially from the statements of facts in their briefs.

do school work and having problems with other kids and her brother but since taking medication these problems have dissipated.

## II.     Summary of Medical and Psychological Evidence

Dr. Vikhta Gurevich, a psychiatrist at Catholic Charities Rockaway Mental Health Center began treating NMP in July 2012 for "symptoms of impulsivity, inattentiveness, aggressive behaviors and low tolerance for frustration." He diagnosed Oppositional Defiant Disorder and prescribed Risperdal, which is typically used to treat schizophrenia and bi-polar disorder. Dr. Gurevich noted that NMP "appears to struggle at times in regards to conflict resolution and will often have outbursts or become aggressive when frustrated" and often experienced "interpersonal conflict with others and appears to have poor conflict resolution skills." She "was irritable and verbally aggressive at times during psychiatric assessment" and her "judgment is poor at times and client can be extremely impulsive." Her speech was clear, coherent, and spontaneous and her thought process was goal-directed and logical. Her mood was "mostly euthymic" (a normal non-depressed, reasonably positive mood), and was "irritable at times." Her "affect was full and congruent with mood and thought process." NMP was alert, had fair concentration, was oriented times three (person, place, and time), and had unimpaired memory with fair information. Her ability to perform calculations, serial sevens, etc., was "fair for stated age." Regarding her learning ability, on July 16, 2012, Dr. Gurevich stated: "Client has been evaluated for speech issues, learning disabilities, etc. [She] has never been held back, but has struggled academically and attends summer school almost every year. [She] appears to become very frustrated and will cry, get upset, or shut down, when she does not understand the school material. [She] passed the 4th grade and will be starting at Lawrence Middle School in 5th grade next year. [She] does well

in math, but struggles with reading comprehension." He further stated that since beginning Risperdal (with no reported side effects), NMP "appears less impulsive and better able to tolerate frustration since beginning Risperdal. She does however continue to exhibit some impulsivity, aggression and oppositional/defiant behaviors."

On July 9, 2012, a psychological assessment was completed by a licensed social worker of Rockaway Mental Health Center at which time NMP was between fourth and fifth grade. NMP was bullied at school and she threatened to kill a boy in her class when he was bothering her, but said she only made the threat because she was angry: she had also stated that she wanted to kill herself and cut her wrists, but denied actually wanting to carry those acts out. NMP had been aggressive towards her peers at school and at home. She had "seemingly fair AOL skills," "was appropriately dressed in a sundress at time of intake and appeared well groomed," and "was engageable and extremely talkative throughout assessment, speaking spontaneously about school and home;" her "affect appeared congruent with mood and thought process." She appeared "to relate fairly well to others" and "displayed good insight for her age, appearing able to articulate her feelings well to worker." Her judgment appeared fair and she appeared motivated to begin treatment. An August 12, 2013 psychological assessment noted a normal evaluation except impaired impulse control and NMP's "behavior is better while on medications."

On September 11, 2013, Dr. Khanam, NMP's pediatrician, completed an assessment form at the request of the agency. Dr. Khanam noted NMP was a well-child with behavioral problems, for which she had been prescribed Risperdal. Tr. 350-51. Dr. Khanam stated that NMP had not displayed any behavior indicating a psychiatric disorder and referred the agency to her treating psychiatrist for details of her psychiatric treatment.

On August 2, 2014, Daryl P. DiDio, Ph.D., diplomat, clinical psychology, completed a "Medical Interrogatory – Child" form, in his role as a medical expert, at the request of the ALJ. Dr. DiDio noted that the materials presented to him provided "sufficient objective medical and other evidence to allow [him] to form opinions about the nature and severity of the child's impairment(s) during the relevant time period" (since the May 5, 2012 alleged onset date). He stated "the clinical record suggests the presence of a learning disability associated with some behavioral disturbances and oppositional/aggressive behavior. [Exhibits] 1F, 4F, 5F." He also noted that "client has exhibited some learning and social difficulties for which she has been placed in an inclusion class at school (low level intervention), and is being treated by a psychiatrist for a diagnosis of oppositional defiant disorder" and that these "limitations/difficulties are mild and with proper parental intervention and support will not pose any serious limitations on client's functioning." Dr. DiDio opined that NMP's impairments did not meet or medically equal the requirements of any of the listings as described in the Listing of Impairments and assessed her ability to function was less than marked in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others; he assessed no limitations in the domains of moving about and manipulating objects, caring for self, and health and physical well-being.

On August 13, 2014, Allan M. Rothenberg, M.D., a non-examining state agency doctor, reviewed the available medical and other evidence (which he called sufficient) and answered interrogatories, in which he included a diagnosis of Oppositional Defiant Disorder. Although Dr. Rothenberg opined that NMP's "impairments, either individually or in combination, [did not] meet or medically equal the requirements of any of the listings as described in the Listing of

Impairments," he concluded that she functionally equals a listing. Dr. Rothenberg stated that NMP's "impairments are speech and language delays, attentional delays, Oppositional defiant disorder, and depression." He assessed that NMP had a less than marked limitation in the domain of acquiring and using information, a marked limitation in the domains of attending and completing tasks, interacting and relating with others, and caring for herself and no limitation in the domains of moving about and manipulating as well as health and physical well-being.

## III.     Summary of School Evidence

### A.     Plaintiff's Individual Education Plans (IEP's)

NMP was referred to her school district's Committee on Special Education near the end of the 2011-12 school year at her father's request. The following tests were administered to her: Weschler-Intelligence Scale for Children Test ("WISC-IV), the Behavior Assessment System for Children - Second Edition, Teacher Report Scale (BASC-2, TRSC), the Behavior Assessment System for Children - Second Edition, Self Report Scale (BASC-2, SRSC) and clinical interview. The Confidential Psychological Evaluation prepared as a result to these tests indicated that she is currently functioning in the average range of intellectual ability, her then present emotional adjustment ranged from good to fair with many of her difficulties appearing related to a somewhat passive interpersonal style. She was in the at-risk range for aggression, depression, adaptability, functional communication, learning problems and leadership but average in study and social skills. NMP's rating for hyperactivity, conduct problems, anxiety, attention problems atypicality and withdrawal were all within normal limits.

Plaintiff first had an IEP for the 2012-13 school year at which time she was in fifth grade. The IEP referenced education reports, the WISC-IV, the Clinical Evaluation of Language

Fundamentals 4th Edition ("CELF-4 test") and the Woodcock-Johnson III Achievement test (cited as Woodloch-Johnson-III ACH Tests). It indicated that NMP's social/emotional levels and abilities are within age appropriate expectations, that she gets along with her peers and that she needs to seek out appropriate people to ask for help when under stress and she also needs to utilize effective coping strategies when faced with conflict situations. The IEP recommended the following Special Education Programs and Services: integrated co-teaching services in English, math, science and social studies once a week, speech/language therapy in a small group twice a week, and counseling once a week. Additionally, directions would have to be repeated and the teacher would have to check for understanding daily. NMP's end of year progress report for her 2012-13 IEP goals states that she did not achieve any of her study skill goals, but achieved all of her speech and social/emotional/behavioral goals; she met 1 of 2 writing goals but not her math goal.

NMP's IEP continued into the next school year (2013-14) at which time she was in sixth grade. The IEP referenced new education reports but the results of the Wechsler Intelligence Scale for Children, CELF-4, and Woodcock-Johnson-III Ach Test were reused. The IEP indicated that NMP does not demonstrate age appropriate study skills and therefore suffers academically. She does not follow oral directions well and that those directions are often rephrased or repeated for her. She is better working in small groups than large groups but in both her frustration may set in and she "shuts down," can be sensitive to criticism from adults and lacks confidence academically. The IEP indicated that she needs to demonstrate grade appropriate study skills, hand in completed assignments consistently on time, improve her ability to analyze the things she reads, improve her spelling, "communicate frustration with academic

tasks in an appropriate manner, [and] be more accepting of criticism." Also she must improve her attendance, attention to task, and her frustration tolerance, and seek help appropriately when needed. Additionally, it stated that NMP has significant delays in reading comprehension, language and written expression, and attentional skills which inhibit participation in age appropriate educational activities. The IEP continued the recommendations made in her first IEP in regards to special education programs and services, but added that she would need to have directions repeated, be checked for understanding daily, and receive positive reinforcement from teachers. The mid-year progress report on NMP's IEP goals stated that she demonstrated improvement in the areas of math, reading, listening skills, written and oral expression, social/emotional, and organization/study skills but still needed remediation in the areas of reading comprehension, math, written organization, and study skills. Among the teacher's comments was a note that NMP is "cooperative when things are going well for her. She has difficulty excepting [sic] constructive criticism. When she starts the period without her homework she tend to shut down and become withdrawn. She needs to be brought to tasks when she becomes distracted." The record does not contain NMP's 2013-14 year end IEP progress report.

 An IEP for NMP was prepared for seventh grade, the 2014-15 school year. New teacher reports were relied upon but test result were reused. The IEP indicates that NMP comes to class on time but does not always have her homework and other supplies with her and does not demonstrate grade appropriate organizational and study skills. Further, her classroom behavior moderately interferes with instruction, she has difficulty accepting criticism from adults, she has good relationships with most of her peers, and needs to use positive strategies to deal with social

conflict. The IEP stated that she needs to improve attention to task, preparedness to learn, and frustration tolerance, and to decrease distractability in class lessons. The IEP continued the previous year 's IEP in regards to special education programs and services.

B.    **Teacher Reports**

NMP's fourth grade teacher completed a teacher report. The teacher stated that NMP functioned below grade level in academic areas. She gets along with other, although there are times she has words with other students and she needs adults to help mediate situations between her and other students. NMP also often needed help completing tasks and relied on that; she had some friends.

In September 2013, NMP's fifth grade teacher completed a teacher questionnaire that presented questions in terms of the domains used by the Social Security Administration. In considering NMP's ability to ability to acquire and use information, the teacher found that she had  either an obvious or serious problem in all areas of the subdomains. With respect to attending and completing tasks, the teacher opined that (1) NMP has an obvious problem focusing long enough to finish an assigned activity or task on a weekly basis and in carrying out multi-step instructions on a daily basis; (2) a serious problem paying attention when spoken to directly on a weekly basis, refocusing to task when necessary on a weekly basis, completing class/homework assignments on a weekly basis, completing work accurately without careless mistakes on a daily basis, working without distracting self or others on a daily basis, and working at reasonable pace/finishing on time on a daily basis; and (3) a slight problem carrying out single step instructions on a daily basis, waiting to take turns on a daily basis,  and changing from one activity to another without being disruptive on a weekly basis. In interacting and relating with

others, the teacher evaluated NMP as having a very serious problem expressing anger appropriately on a daily basis; a serious problem in the areas of keeping friends on a monthly basis, seeking attention appropriately, asking permission appropriately on a daily basis, introducing and maintaining relevant and appropriate topics of conversation on a weekly basis, and interpreting the meaning of facial expressions, body language, hints, and sarcasm on a daily basis. In the area of caring for self, the teacher opined that NMP has a very serious problem handling frustration appropriately on a daily basis; a serious problem being patient when necessary on a daily basis, identifying and appropriately asserting emotional needs on a daily basis, responding appropriately to changes in own mood on a daily basis, responding appropriately to changes in own mood on a daily basis, and using appropriate coping skills to meet daily demands of school environment on a daily basis; an obvious problem knowing when to ask for help on a daily basis; and a slight problem using good judgment regarding personal safety and dangerous circumstances on a weekly basis.

In January 2014 (approximately mid-way through the school year), NMP's sixth grade math and science teacher completed a teacher reports, stating NMP was functioning below grade level. With respect to her social/emotional functioning level the teacher wrote that she can be kind and respectful to teachers and peers but if she is upset about something she shuts down and will not participate and that she is functioning as an average 6th grader socially and emotionally.

C.      Report Cards

On NMP's fifth-grade report card her teachers reported that she was a pleasure to have in class; however, in math, science, and social studies, more effort was needed. Also she was missing homework and class work, and she was unprepared in science class.

NMP's sixth-grade report cards show NMP mostly was a pleasure to have in class and had enthusiastic participation, but her English, science, math and social studies teacher(s) reported that she needed to show more effort. Her science teacher reported she exhibited disruptive behavior, and had issues completing homework. NMP's final grades were between 70.00 and 72.00 in her main courses (English, math, science and social studies).

### D. School Disciplinary Reports

By letter dated October 17, 2014, NMP's parent was advised that she was receiving an in school suspension because she was insubordinate and disrespectful to teachers and administrators. By letter dated October 21, 2014, her parent was notified that she was receiving a five day out of school suspension for threatening the safety of the school and on October 22, 2017 her parent was notified that a superintendent's hearing had been scheduled.[3]

## DISCUSSION

### I. Standards

### A. Standard of Review

When reviewing a Social Security claim, a district court does not determine de novo whether the plaintiff is disabled and therefore entitled to disability benefits. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the reviewing court determines only "whether the Commissioner's conclusions 'are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard.'" *Id*. (quoting *Beauvoir v. Chater*, 104 F.3d 1432, 1433 (2d Cir. 1997)); *see also Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (a court will only

---

[3] Given that a superintendent's hearing is required for any suspension in excess of five days, *see* N.Y. Educ. Law § 3214(3)(c), it appears that the five-day out of school suspension and the superintendents hearings are related to the same conduct.

overturn the ALJ's decision if it is "based upon legal error" or "not supported by substantial evidence") (internal quotation marks omitted).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation and quotation marks omitted). However, "[i]n conducting [its] review ... [the Court] will not substitute [its] own judgment for that of the Commissioner, even if [it] 'might justifiably have reached a different result upon de novo review.' " *Campbell v. Astrue*, 465 Fed. App'x 4, 5 (2d Cir. 2012) (summary order) (quoting *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984)). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings 'must be given conclusive effect' so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (quoting *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982)).

### B.    Eligibility Standard for Minors

The requirements for a child to be eligible for SSI benefits based on disability are set forth in 42 U.S.C. § 1382(a)(3)(C). That section provides:

> (i) An individual under the age of 18 shall be considered disabled for purposes of [SSI] if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

> (ii) Notwithstanding clause (i), no individual under the age of 18 who engages in substantial gainful activity . . . may be considered disabled.

42 U.S.C. § 1382(a)(3)(C).

The regulations set forth a three step analysis for determining disability in children. First, the Commissioner determines if the child is working and engaged in substantial gainful employment; if so the claim is denied. If not, then the Commissioner determines if the child has a medically determinable impairment that is severe, i.e. limits the child's ability to do physical or mental work-related activities. If not, the claim is denied. If the child has a severe impairment, then the third step is to determine whether the impairment or combination of impairments meets, medically equals, or is functionally equivalent to the criteria in the Listing of Impairments in Appendix 1. If not the claim is denied. 20 C.F.R. § 416.924; *see Encarnacion ex rel. George v. Astrue*, 568 F.3d 72, 74-75 (2d Cir. 2009); *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004).

In determining functional equivalence, the child's functioning in six areas, referred to as domains, is assessed. The six domains are (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for self; and (6) health and physical well-being. 20 C.F.R. § 416.926a. For an impairment(s) to functionally equal the Listings, there must be an extreme limitation in one domain or marked limitations in two domains. *Id.* "Extreme" means the impairment very seriously interferes with his/her ability to independently initiate, sustain, and complete activities and "marked" means the impairment seriously interferes with his/her ability to independently initiate, sustain, and complete activities. *Id.* at §§ 416.926a(e)(2) & (3).

## C.      The ALJ's Decision

In her decision dated October 17, 2014, the ALJ followed the three step-procedure outlined above to determine that NMP is not disabled. At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since the application date. At the second

step, the ALJ determined that NMP had the following severe impairments: oppositional defiance disorder and speech impairment. At step three the ALJ found that NMP's do not meet or medically equal the criteria of a listed impairment. The ALJ based this conclusion on the opinion of Dr. DiDio, the absence of the requisite criteria in the medical records, and the absence of findings by any physician that would satisfy the requirements of any listed impairment. As for functionally equaling an impairment in the Listing, the ALJ determined that NMP had (1) less than marked limitations in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for self and (2) no limitations in the domains of moving about and manipulating objects, and health and physical well-being. As the ALJ determined that NMP's impairments were not the functional equivalent of an impairment in the Listing, she denied benefits.

**D.      The Parties' Contentions**

Plaintiff moves for judgment on the pleadings arguing the (1) the ALJ's failure to specify the weight given to treating psychiatric evidence constitutes an error of law; (2) the record reflects that NMP meets the definition of having a severe impairment; and (3) the finding that NMP's impairments are not functionally equal to a listed impairment are not supported by the record as a whole and NMP has marked limitations in attending and completing tasks, interacting and relating with others, and caring for self. The Commissioner cross-moves asking this Court to affirm the denial of benefits on the grounds that the ALJ applied the correct legal standard to find that NMP was not disabled and that the factual findings were supported by the evidence.

Having reviewed the record, the Court finds that the ALJ's rejection of Plaintiff's claim is supported by substantial evidence and that there was no legal error.

**E.     Analysis**

1.     Treating Psychiatric Evidence

Contrary to Plaintiff's assertions, the ALJ did consider the notes of NMP's treating psychiatrist and did discuss his treatment of her. Among other things, the ALJ specifically noted that Dr. Gurevich stated that medication (i.e. Risperdal) had reduced NMP's hyperactivity and impulsivity and his notes reflect that she made improvements in coping skills and behavior and her insight and judgment were good.

Nor was there any error in the ALJ not assigning a specific weight to that evidence because that requirement only applies to opinion evidence. *See* Social Security Ruling 96-2p, 1996 WL 374188 *2 ("The opinion must be a 'medical opinion.' Under 20 C.F.R. §§ 404.1527(a) and 416.927(a), 'medical opinions' are opinions about the nature and severity of an individual's impairment(s) and are the only opinions that may be entitled to controlling weight.") Here, Dr. Gurevich did not express any opinion as to severity of NMP's impairment. Any error in not assigning weight to his opinion about the nature of NMP's impairment is harmless as the ALJ concurred with Dr. Gurevich's diagnosis of oppositional defiant behavior.

2.     Whether NMP's Impairment was Severe

Plaintiff's second argument is that NMP meets the definition of having a severe impairment and that the ALJ erroneously relied upon the opinion of Dr. Didio that NMP's impairment do not meet or medically equal the requirements of any Listed Impairment. (Pl.'s Mem. at 15-16.) Plaintiff's argument conflates steps two and three of the three-step analysis described above, as well as the distinct analyses of whether  an impairment meets or medically equals a listing as distinct from whether the functional limitations of the impairment are

equivalent to the disabling functional limitations of a listed impairment.

First, the ALJ did find, at step two, that NMP had the severe impairments of oppositional defiance disorder and speech impairment. (Tr. at 59.)

Turning to the first part of the step three analysis, i.e., whether NMP had an impairment or combination of impairments that meets or medically equals the severity of one of the Listed Impairments, the ALJ wrote:

> Listed impairments under section 112.08 (personality disorder) was considered. However, the requisite criteria for the relevant listing was absent from the medical records. Further, no treating or examining physician has indicated findings that would satisfy the requirements of any listed impairment.
> Dr. DiDio opined that [NMP's] impairments alone or in combination do not meet or medically equal the requirements of any of the listings . . . .

(Tr. at 59-60.) Plaintiff does not attempt to correlate any of the criteria for section 112.08 with the evidence in the record and the Court does not discern a basis for any such correlation. Rather, Plaintiff argues that the ALJ should have adopted the opinion of Dr. Rothenberg rather than Dr. Didio. However, both doctors concluded that NMP's impairments did not meet or medically equal the requirements of any listing. Their opinion differed in whether the functional limitations of her impairments are equivalent to the disabling functional limitations of a listed impairment. To the extent Plaintiff ascribes error in the ALJ's affording little weight to Dr. Rothenberg's opinion and greater weight to that of Dr. Didio on the issue of equivalency, that argument is addressed in the following section.

The Court finds no error in the ALJ's finding that NMP has the severe impairments of oppositional defiance disorder and speech impairment and that those impairments do not meet or medically equal the requirements of any of the Listed Impairments.

3.    Functional Equivalence

Plaintiff asserts that the ALJ's finding that NMP's impairments are not functionally equal

to a listed impairment is not supported by the record as a whole. Specifically, it is argued that the

ALJ should not have afforded the opinion of Dr. DiDio great weight as it is not support by the

record as whole; rather the record as a whole supports Dr. Rothenberg's that conclusion that

NMP has marked limitations in (a) attending and completing tasks, (b) interacting and relating

with others, and (c) caring for self.[4]

In affording great weight to Dr. DiDio's opinion, the ALJ reasoned that his findings were

consistent with the medical evidence and the testimony at the hearing, as well as the fact that he

is a specialist in the mental health field. In giving little weight to Dr. Rothenberg's opinion, the

ALJ noted first that it was incompatible with the teacher reports. She then stated:

> I also note that while Dr. Rothenberg is a pediatrician, he is not a
> specialist in the mental health field. He did not have the benefit of
> the hearing testimony, indicating that claimant is doing much better
> with medication, His findings that the claimant has marked
> limitations in attending and completing tasks and interacting and
> relating with others, are not well supported. The claimant appears
> to get along well with friends, does well peer conferencing,
> although she has some difficulty accepting criticism frm adults.
> Additionally there is little basis for a marked limitation in caring
> for self as she does chores at home, dresses herself, feeds herself
> and is planning on trying out for sports teams at school.

The record evidence discussed by the ALJ prior to the weight assigned to the opinions of

Dr. Didio and Rothenberg provides additional support for the weight assigned. *Cichocki v.

Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (An "ALJ need not recite every piece of evidence

---

[4]Plaintiff does not challenge the ALJ's conclusions that NMP has no limitations in the
domains of moving about and manipulating objects and health and physical well-being and the
Court finds that these conclusions are supported by substantial evidence in the record as a whole.

that contributed to the decision, so long as the record 'permits us to glean the rationale of an ALJ's decision.' " ) For example, at the hearing NMP's father testified than since taking Risperdal NMP rarely argues with people or shuts down and has not had any problems with violent behavior, and she has friends in and out of school, texts and uses Facebook. Moreover, she does chores, can shower herself, chooses her own clothes and picks up after herself. NMP testified that she goes to the park, stores and movies. Dr. Gurevich's noted that NMP has made improvements in coping skills and reducing her symptoms; progress notes indicate that NMP's behavior has improved and her insight and judgment are good. Intelligence testing of NMP indicates she has the ability to solve problems requiring straightforward visual-motor processing skills and nonverbal reasoning skills; a clinical behavioral assessment shows NMP has difficulties in aggressive behavior but her hyperactivity, conduct problems, anxiety, attention problems and withdrawal were all within normal limits. School records show that NMP has shown improvement in receptive language, expressive language and oral expression, is cooperative in her speech group and has made gains in using coping strategies in dealing with frustration and other negative emotions.

Although the ALJ was faced with conflicting opinions, it is precisely the role of the ALJ to resolve these conflicting opinions. *See Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 112 (2d Cir. 2012).

The Court now turns to the three domains in dispute.

　　　a.　　Attending and Completing Tasks

In assessing whether a child has a marked limitation in the domain of attending and

completing tasks, an ALJ considers how well the child is able to focus and maintain attention, and how well he begins, carries through and finishes activities, including the pace at which he performs activities and the ease with which he changes them. See 20 C.F.R. § 416.926a(h).

The ALJ's conclusion is reasonable based upon evidence in the record. The ALJ recognized that NMP certainly has some limitations in this domain but concluded it was less than marked. According to NMP's treating psychiatrist, NMP has fair concentration, goal-directed and logical thought processes, and unimpaired memory with fair information. Similarly, the teacher questionnaire completed by NMP's fifth grade teacher noted that many of her attention problems occurred on a weekly and not daily basis and NMP's IEP progress report indicates demonstrated improvement in listening and study skills. Finally, NMP's IEP does not provide for any accommodation regarding NMP's participation in standardized tests and a clinical behavior assessment rated her attention problems within normal limits.

While is this domain, as in the domains discussed below, there is conflicting evidence as to the severity of NMP's limitations, it is the province of the ALJ to weigh the evidence and the record contains substantial evidence to support her determination.

      b.      Interacting and Relating with Others

In the domain of interacting and relating with others, the ALJ should consider how well the child initiates and sustains emotional connections with others, develops and uses the language of his community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others. See 20 C.F.R. § 416.926a(i)(1). Examples of marked or extreme limitations in this domain include: having no close friends, withdrawing from people or being overly anxious or fearful of meeting new people,

difficulty communicating with others, difficulty speaking intelligibly or with adequate fluency. These examples, however, can vary on a case-by-case basis and depend on the child's age and developmental stage. Id. § 416.926a(i)(3).

In determining that NMP's limitations in this domain were less than marked, the ALJ noted some difficulties in this area but found those difficulties counterbalanced by the evidence that NMP has friends, gets along with family and peers, and Dr. Didio's opinion that he oppositional defiant behavior is not severe. Other evidence discussed by the ALJ that supports this determination includes school records that note that NMP is cooperative in speech class, has shown improvement in language and oral expression, uses strategies to deal with negative emotions, and teacher evaluations that NMP is functioning as an average 6th grader socially and emotionally and is a pleasure to have in class.

Once again, Plaintiff is essentially asking this Court to second guess the weighing of the evidence undertaken by the ALJ – which is not this Court's role.

c.      Caring for Self

This domain considers "how well you maintain a healthy emotional and physical state, including how well you get your physical and emotional wants and needs met in appropriate ways; how you cope with stress and changes in your environment; and whether you take care of your own health, possessions and living areas. 20 C.F.R. § 416.926a(k). Regulations provide the following age group descriptors:

> (iv) School-age children (age 6 to attainment of age 12). You should be independent in most day-to-day activities (e.g., dressing yourself, bathing yourself), although you may still need to be reminded sometimes to do these routinely. You should begin to recognize that you are competent in doing some activities and that you have difficulty with others. You should be able to identify

those circumstances when you feel good about yourself and when you feel bad. You should begin to develop understanding of what is right and wrong, and what is acceptable and unacceptable behavior. You should begin to demonstrate consistent control over your behavior, and you should be able to avoid behaviors that are unsafe or otherwise not good for you. You should begin to imitate more of the behavior of adults you know.

(v) Adolescents (age 12 to attainment of age 18). You should feel more independent from others and should be increasingly independent in all of your day-to-day activities. You may sometimes experience confusion in the way you feel about yourself. You should begin to notice significant changes in your body's development, and this can result in anxiety or worrying about yourself and your body. Sometimes these worries can make you feel angry or frustrated. You should begin to discover appropriate ways to express your feelings, both good and bad (e.g., keeping a diary to sort out angry feelings or listening to music to calm yourself down). You should begin to think seriously about your future plans, and what you will do when you finish school.

20 C.F.R. § 416.926a(k)(2)(iv), (v). Examples of limited functioning include not dressing or bathing yourself appropriately for your age, engaged in self-injurious behavior such as not taking medication and not pursuing enjoyable activities or interests. *Id.* at § 416.926a(k)(3).

The ALJ's determination that NMP's limitations in this domain are less than marked is supported by substantial evidence. The evidence of record demonstrates that NMP takes her medication, dresses, feeds herself and performs chores. She goes to the movies, Facebooks with friends, and intends to try out for school sports teams. Her medication has greatly reduced her mental problems. While NMP has some residual behavioral problems, the ALJ determination that NMP has less than marked limitations in this domain was reasonable.

In sum the Court concludes that the ALJ did not commit any legal error and her determination is supported by substantial evidence.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is denied and

Defendant's cross-motion is granted and the decision of the Commissioner is affirmed. The

Clerk of the Court is directed to enter judgment accordingly and to close this case.

Dated: Central Islip, New York
     November 7, 2017

                                     /s/  Denis R. Hurley
                                     Denis R. Hurley
                                     United States District Judge